IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE JACKSON, R31861, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:20-CV-237-DWD |
| ) | |
| D. BROOKHART, ) | |
| IDOC DIRECTOR, and ) | |
| T. ATKINS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This case is before the Court on Plaintiff Maurice Jackson's Motion for Preliminary Injunction (Doc. 1), Motion to Stay Scheduling Order (Doc. 39) and Motion to Provide Information (Doc. 43), the last of which is essentially a supplement to his Motion for Preliminary Injunction  Plaintiff is an inmate in the Illinois Department of Corrections ("IDOC") housed at Lawrence Correctional Center ("Lawrence"). He alleges deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983 and seeks injunctive relief. The Court held a hearing via Zoom on March 24, 2021. Plaintiff appeared and gave testimony on his pending Motions. Defendants appeared through Counsel. For the reasons detailed below, Plaintiff's Motion for Preliminary Injunction will be denied without prejudice.

## **F**ACTUAL **A**LLEGATIONS

In his pleadings, Plaintiff makes the following allegations: on November 20, 2019, Plaintiff was transferred directly into segregation at Lawrence, after he had been attacked at Pinckneyville Correctional Center due to a gang "hit" that had been placed on him and for talking to a transgendered inmate. (Doc. 1, p. 1). He requested protective custody due to the gang hit on him and was informed that Lawrence does not have protective custody. (*Id.*). At previous institutions he had been given a single cell due to being classified as "vulnerable," but when he asked for a single cell at Lawrence, he was told that no one gets a single cell. (*Id.*, pp. 1-2). When he was placed in the general population, Plaintiff's cellmate was a member of one of the gangs (the Black Stones) with a hit on him. *(Id.*, p. 2). Plaintiff asked for a crisis team and went on suicide watch. (*Id.*). He asked for protective custody several more times and was denied. (*Id.*). Plaintiff spoke with Dr. Pittman, who explained that if he was given a cellmate, it would be another vulnerable-status inmate he found "compatible," and that four people would vote on it (including a final overriding vote by the warden). (*Id.*). Atkins, a placement officer, subsequently told Plaintiff that "[i]f it's left to me, you w[o]nt be safe nowhere." (*Id.*). He ascribes this hostility to Plaintiff "getting Springfield involved" by invoking his vulnerable status. (*Id.*).

Plaintiff found a transgendered female inmate that he considered compatible, but Atkins had the other inmate moved to another housing unit "out of retaliation[.]" (*Id.*, p. 3). Plaintiff was subsequently told by other staff that Placement had prohibited him and this other inmate from being housed together. (Id.). He ascribes a racial component to

this decision—Plaintiff is black, and he cites two sets of white inmates whose "relationships" are allowed.  (*Id.*).  Plaintiff subsequently renewed his request for protective custody to Mental Health, alternatively asking for a transfer to Stateville Correctional Center (which has protective custody) and that his proposed cellmate be sent there as well.  (*Id.,* pp. 3-4).  He did not receive a response.  During this time he was "threatened by inmates [with] bodily harm[.]"  (*Id.,* p. 4).  Placement then moved Plaintiff to a housing unit with gang members (including Black Stones) who were in Menard Correctional Center with him when the hit was placed on him.  (*Id.*).

Defendants filed responses to the Motion for Preliminary Injunction (Doc. 10 and 24).  Included in the responses was an affidavit from Defendant Brookhart, stating that she was informed that Plaintiff had been interviewed by the Investigations Unit on March 8, 2020, during which he stated that he did not know who had placed the hit on him, that no one had made comments directly to him or threatened to harm him, that he felt safe at the institution and that Plaintiff "ultimately desired to be housed with a specific inmate." (Doc. 24, pp. 5, 6).  Plaintiff disputes the account of the interview.  (Doc. 25). Brookhart further stated that Plaintiff was not currently housed in a housing unit with any members of an STG known to have a hit on him. (Doc. 24, p. 6).  Plaintiff also disputes that allegation.  (Docs. 32 and 33).

In his latest supplement, Plaintiff alleges that "there is no safe haven here", but that he would be placed "in a safe environment for a couple months, until Placement and the Warden decided I've been safe long enough, just to put [him] in danger again."  (Doc. 43, p. 1).  He states he is currently in Cell 4 of the Lower Deck in 2 House of C Wing. (*Id.*,

Page **3** of **10**

p. 2). Plaintiff alleges that "the Kings and Vice Lords [are] bothering me and threatening me the most." (*Id.*, p. 1). He states that there are Vice Lords and Kings in a number of other cells surrounding him, and that the individuals in Upper 13 and Upper 20 are "bothering and threating [him]." (*Id.*, p. 2). He requested either a single cell on a top deck or the 1 House of C Wing, but Brookhart refused. (*Id.*, p. 1). Plaintiff's most recent requested relief is that he be placed in protective custody or transferred to Stateville Correctional Center for protective custody. (Doc. 43, p. 2). As Lawrence has no protective custody section, Plaintiff is essentially asking for a transfer of prisons.

At the March 24, 2021 hearing, Plaintiff testified that he is now being housed in a single cell at Lawrence and has been housed in a single cell for almost one year. He further stated that he feels safe for now, and that he has not received any threats from Defendants or other IDOC employees threatening to move Plaintiff out of his single cell. Plaintiff testified that he continues to believe that there are threats against his safety from nonparty gang members. He testified that he learned of these threats or "hits" from his prior cell neighbor (who was an alleged member of one of these gangs) in or about 2014 when he was housed at Pontiac Correctional Center. However, Plaintiff confirmed that now that he is in a single cell, he now feels safe. The Court finds that Plaintiff testified credibly. The Court is satisfied that Plaintiff feels safe in his current single cell placement and further finds that there is no present threat to Plaintiff's safety as it relates to his current single cell placement at Lawrence.

## LEGAL STANDARD

Preliminary injunctions are extraordinary and drastic remedies that should not be granted unless the movant makes a clear showing that it has carried its burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Mandatory preliminary injunctions, like the one requested here are "ordinarily cautiously viewed and sparingly issued." *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Under Federal Rule of Civil Procedure 65, the party moving for an injunction has the burden of showing that 1. it has some likelihood of succeeding on the merits, 2. that no adequate remedy at law exists, and 3. that it will suffer irreparable harm in the interim period prior to final resolution of its claims. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the movant establishes these elements, the Court must then balance the potential harm to the movant if the preliminary injunction were wrongfully denied, against the potential harm to the non-movant if the injunction were wrongfully granted. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). The Court should also take into consideration the effect that granting or denying the injunction will have on the public. *Girl Scouts*, 549 F.3d at 1086.

The Prison Litigation Reform Act ("PLRA") adds an additional layer of restrictions to injunctive requests by prisoners. 42 U.S.C. § 1997e & 18 U.S.C. § 3626. "The PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation." *Brown v. Plata*, 563 U.S. 493, 530 (2011) (citing 18 U.S.C. § 3626(a)). "When determining whether these

requirements are met, courts must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Id.* (internal quotations omitted).

## DISCUSSION

Plaintiff testified credibly at the March 24, 20201 hearing, that he presently feels safe in his single cell placement. However, Plaintiff ultimately seeks a permanent injunction requiring the IDOC Defendants to continue his single cell status indefinitely, even though there is no constitutional right for a prisoner to be housed in a particular institution or placement. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (Inmates have no justifiable expectation to be incarcerated in any particular prison); *Johnson v. Barry*, 815 F.2d 1119, 1121 (7th Cir. 1987) (same). Nevertheless, as Plaintiff feels safe in his current single cell placement, and there is no present threat of Defendants removing him from his single cell status, Plaintiff's request for an injunctive relief must be denied because he cannot meet his burden to show a likelihood of success on the merits or that he would suffer irreparable harm.

### Likelihood of Success on the Merits

To obtain a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits. A movant's showing of likelihood of success on the merits must be "strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (citing *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020)). This "does not mean proof by a

preponderance .... [b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*[1]

Plaintiff's claim related to his housing is essentially an Eighth Amendment failure to protect claim. To prevail on such a claim, a prisoner must show that he faces a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). However, a generalized risk of violence is not enough, for prisons are inherently dangerous places. *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). A substantial risk of serious harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911. "[T]he conditions presenting the risk must be 'sure or very likely to cause ... needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993)).

Plaintiff's testimony that he feels safe in his current single cell placement negates his claims that he currently faces a substantial risk of serious harm. Moreover, as there is no present indication that Defendants plan to remove Plaintiff from his single cell status, at this juncture, Plaintiff cannot demonstrate a likelihood of success on the merits of his

---

[1] How strong this likelihood must be is the subject of some uncertainty. The holding in *Illinois Republican Party* specifically condemns the previously-applied standard of "better than negligible chance of success" but offers little in the way of guidance other than "less than a preponderance of evidence." Further, the Seventh Circuit has said that the "sliding scale" approach still applies, despite the recalibration of the standard. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). The Court assumes that the low end of the sliding scale now starts at "strong" and becomes more demanding from there.

Eighth Amendment claim. Accordingly, Plaintiff has failed to meet his burden of showing a likelihood of success on the merits so to sustain his request for injunctive relief.

### Irreparable Harm

Plaintiff also cannot show irreparable harm. For preliminary relief to be granted, the irreparable harm must also be likely. "That is, there must be more than a mere possibility that the harm will come to pass, but the alleged harm need not be occurring or be certain to occur before a court may grant relief." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788–89 (7th Cir. 2011) (quotations omitted). "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur." *Id.* Again, as Plaintiff testified credibly that he feels safe in his current single cell placement, the Court finds that Plaintiff does not currently face certain or irreparable harm so to sustain his request for an injunction.

### PLRA Compliance

A further note is appropriate on the requested relief and its compliance with the PLRA. The purpose of a preliminary injunction is to preserve the status quo until the merits of a case can be resolved. *Indiana Civ. Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). The PLRA's limitation of prospective relief to that which is "narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation" further cabins what relief the Court could afford Plaintiff even if it found he were entitled to a preliminary

injunction on this issue. Plaintiff's testimony that he currently feels safe, in addition to his prior written statements in his pleadings that he previously was held in other safe parts of Lawrence of stretches of time, suggest that there are appropriate and safe areas within Lawrence for Plaintiff to be housed. Accordingly, transfer to another facility which has a protective custody area may be more than the minimum step required to remove Plaintiff from any physical danger, should such physical danger credibly materialize.

## MOTION TO WITHDRAW RELIEF IN AMENDED COMPLAINT

Also, at the hearing on March 24, 2021, Plaintiff orally moved to withdraw his requested relief No. 3 in is Amended Complaint (Doc. 23). Specifically, Plaintiff seeks to waive any relief related to his request for a "permanent injunction, that allows inmates who's [sic] been sexually abused by cellmates, and as a result is labeled vulnerable status, be allowed to cell with transgender's, or those, who are also vulnerable status, that is compatible because this will incentive good properly placement." Defendants' Counsel had no objections to Plaintiff's request. Accordingly, Plaintiff's Motion to Withdraw Requested Relief No. 3 from his Amended Complaint (Doc. 23) is **GRANTED**.

## DISPOSITION

For the above stated reasons, Plaintiff's Motion for Injunctive Relief (Doc. 1) is **DENIED, without prejudice**. Plaintiff may seek further injunctive relief in the event his cell status or circumstances change. Plaintiff's Motion to Stay Scheduling Order (Doc. 39) is **DENIED as moot**. The Court will enter a new scheduling order by separate court order. Plaintiff's Motion to Provide Information (Doc. 43) is **GRANTED**. The Court

considered Plaintiff's allegations in the Motion to Provide Information when considering Plaintiff's Motion for Injunctive Relief (Doc. 1).  Finally, Plaintiff's Requested Relief No. 3 as pled in his Amended Complaint (Doc. 23) is hereby **WITHDRAWN**.

**SO ORDERED.**

Dated:  March 25, 2021

_____
DAVID W. DUGAN
United States District Judge